KAMAR INTERNATIONAL INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 84–05–00718

Before DiCARLO, *Judge.*

(Decided October 16, 1986)

*Stedina & Deem (Charles P. Deem)* for plaintiff.
*Richard K. Willard,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Civil Division, Department of Justice *(Nancy E. Reich)* for defendant.

## MEMORANDUM AND OPINION

DiCARLO, *Judge:* Plaintiff challenges the United States Customs Service (Customs) classification in 1982 of stuffed toys from Taiwan depicting E.T. the Extra-Terrestrial (E.T.) as created by the movie and novel of the same name under item 737.95 of the Tariff Schedules of the United States (TSUS) covering other toys, not specially provided for ("nspf") dutiable at 13.6% ad valorem. Plaintiff contends the imports are entitled to entry duty-free pursuant to 19 U.S.C. § 2463(b) under item 737.30, TSUS, as toy figures of an "animate" object. The case was submitted to the Court in lieu of trial upon an agreed statement of facts and submission of exhibits.

The question presented is whether stuffed toys depicting the imaginary character E.T. which do not represent any person or thing known to be living on earth or elsewhere are "toy figures of an ani-

mate object" within the meaning of item 737.30, TSUS. Defendant contends that they are not, but the Court finds to the contrary.

Congress offered no guidance on the precise definition of the phrase "animate object" as used in paragraph 1513 of the Tariff Act of 1930 which later became item 737.30, TSUS. In the absence of contrary legislative intent or proof of a different commercial designation, a tariff term is to be construed in its commonly received and popular sense. *See Armand Schwab & Co., Inc.* v. *United States,* 32 CCPA 129, 132, C.A.D. 296 (1945); *Ozen Sound Devices* v. *United States,* 67 CCPA 67, C.A.D. 1246, 620 F.2d 880 (1980).

In *H. Hudson Dobson* v. *United States,* 28 Cust. Ct. 290, C.D. 1424 (1952), the court determined the common meaning of the term "animate object." In *Hudson,* the court was confronted with a similar classification problem involving certain "Dinky Toys" which were metal toys of trucks or motorcycles with permanently attached replicas of human figures. Defining "animate object" the court stated "an 'animate' object is one representing animals or people, that is, possessing animal life, and that inanimate objects are those which are not endowed with animal life, such as benches, trees, fences, etc." *Id.* at 293. The court concluded that the items, clearly a blend of animate figures and inanimate vehicular objects, were not "figures or images of animate objects" within the meaning of the tariff schedules. *Id.*

The enactment of the TSUS by Congress in 1962 did not affect the *Hudson* definition and it is presumed to be ratified and adopted in the absence of express history indicating a contrary intent. *See, e.g., United States* v. *Bassichis Co.,* 16 Ct. Cust. App. 410, 414, T.D. 43133 (1928); *United States* v. *D. H. Grant & Co., Inc.,* 47 CCPA 20, 27, C.A.D. 732 (1959). Defendant contends that this definition as relied on and interpreted in later cases evidences an intention to limit the term "animate object" to either humans or real, existing animals to the exclusion of unreal, imaginary creatures with animal or humanoid characteristics.

Defendant first relies upon the decision in *Lewis Galoob* Co. v. *United States,* 66 Cust. Ct. 484, C.D. 4239 (1971) where the court ruled that "Swivel-O-Matic" toy robots were not animate objects because they did not represent a living being. The toy robot in *Galoob* could rotate its head 360 degrees and shoot guns from its chest cavity. Finding these qualities "inhuman" the court concluded that "the addition of 'facial' features to what otherwise represents a robot or inanimate being is not sufficient to transform the present article into a figure of an animate object for the reason that the article does not represent any living being." *Id.* at 486.

Defendant's reliance on *Galoob* in misplaced. The court concluded that a robot is not an animate object because it is not a living thing endowed with life. This result is consistent with the earlier holding in *Louis Marx & Co.* v. *United States,* 40 Cust. Ct 610, Abs. 62104 (1958) where the court found "mechanical walking robots" not to be

animate objects because they represented a mechanical device operating through scientific or mechanical media rather than animal life. *Galoob* does not stand for the proposition that the term "animate" excludes imaginary creatures with animal or humanoid characteristics.

Defendant next seeks support from *Louis Marx & Co.* v. *United States,* 66 Cust. Ct. 139, C.D. 4183 (1971) to limit the "living things" included as animate objects to only real or existing creatures. In *Marx* the court rejected a classification of imports from the "Mechanical Hopping Munchie Melon Series" as animate objects under the TSUS. The court characterized the imports as representing "a melon, a corn and a banana with facial features added" and reasoned that in effect they represented toy figures of simply inanimate plant life rather than an animate object. *Id.* at 143.

Although the plaintiff in *Marx* argued that an animate object can represent an imaginary or fictional character, the court did not address this issue. Instead, the court held the merchandise to represent the plant kingdom finding it inanimate since it did not represent a living being possessing animal life.

The term "animate object" has not been judicially limited, as defendant contends, only to toy products which represent a living species of person or animal known on earth. If defendant were correct in its interpretation of "animate," potential classifications would result in illogical distinctions. Assuming a stuffed toy of Captain Kirk of Star Trek fame was not classifiable as a doll, it would be odd to have such a toy included in a category for animate objects while a similar stuffed toy of a fictional creature from the imaginary planet Vulcan, such as Mr. Spock, would be excluded. This result seems especially incongruous when the only apparent differences between the two would be Mr. Spock's pointy ears and total lack of human emotion.

The precedent relied upon by defendant stands for the proposition that "animate" refers to living beings possessing animal life as opposed to robots or plants. This definition of animate object is broad enough to encompass fictional creatures with humanoid or animal features and characteristics that represent purported life forms on other planets.

The stuffed E.T. exhibits before the Court have humanoid or animal features such as eyes, nose, mouth, arms, hands, fingers, legs, feet and toes. The movie and book about E.T. reveal that E.T. possesses most traits associated with humans. In these respects, E.T. even though fictional represents or characterizes a living being possessing animal life as opposed to robot or plant "life."

Finally, defendant argues that defining animate object to include unreal, imaginary creatures places an undue burden on Customs. According to defendant, Customs cannot be presumed to know or forced to discover the subjective characteristics of mythical or fictitious characters in order to determine if toy representations of such

are living beings defined as animate objects within the meaning of the TSUS. The Court points out that Customs has been willing to address and evaluate the subjective characteristics of fictional characters in the past to determine if such are animate within the TSUS. *See* "Classification: Figures Inspired by the Movie, 'Star Wars,' " C.S.D. 99–501 (July 11, 1979) (reasoning that toy figures of "Sand People," "Jawa" and "Chewbacca" are classifiable as toy figures of animate objects because as depicted in the movie Star Wars they are living beings endowed with animal life).

Subsequent to institution of this case, Congress created new tariff provisions for toy figures of "inanimate" objects, items 737.47 and 737.49, TSUS. Act of Jan. 12, 1983, Pub. L. No. 97–446, § 113, 96 Stat. 2329, 2334 (1982) (effective Jan. 27, 1983). While passed too late to be controlling on the issue presented here, these provisions might have impact upon future imports of this nature. Ruling in the present action in reliance on the caselaw as it existed at the time of entry of the merchandise, the Court finds that the presumption of correctness has been rebutted and that the articles in question are properly classified under item A737.30, TSUS, as "toy figures of an animate object." Judgment will be entered accordingly. So ORDERED.